UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HESSENN GROUP LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>INNERSCOPE HEARING<br>TECHNOLOGIES, INC.,<br><br>        Defendant. | No.  2:24–cv–00794–DAD–CKD<br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS<br><br>(ECF No. 25) |

Plaintiff Hessenn Group LLC moves the Court for default judgment against Defendant InnerScope Hearing Technologies, Inc. ("InnerScope").[1]  (ECF No. 25.) Specifically, Plaintiff seeks a default judgment against Defendant for damages in the amount of $2,301,700.83 plus post-judgment interest for breach of contract and account stated.

Defendant has neither appeared nor opposed the motion. The Court previously ordered this motion submitted without appearance and argument pursuant to Local Rule 230(c) & (g). (ECF No. 26.) For the reasons set forth below, the Court RECOMMENDS Plaintiff's motion for default judgment should be GRANTED IN PART, DENIED IN PART.

/ / /

---

[1]  This motion is referred to the undersigned pursuant to Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1)(A).

1

**BACKGROUND**

On March 15, 2024, Plaintiff filed a complaint against Defendant for breach of contract and account stated. (ECF No. 1.) Plaintiff alleges that Plaintiff and Defendant entered into a contractual relationship during September 2020. (*Id*. at ¶ 5.) Plaintiff was to provide goods to defendant. (*Id*.) Plaintiff alleges that it did supply goods to Defendant and issued invoices for the goods. (*Id*. at ¶ 6.) Plaintiff states Defendant failed to pay the amounts due pursuant to the invoices. (*Id*. at ¶ 7.) Plaintiff alleges that it issued a demand letter to Defendant on January 22, 2024, and that Defendant did not pay. (*Id*. at ¶ 8.) Plaintiff seeks payment pursuant to the invoices and storage fees to store the products. (*Id*. at ¶ 9.) At the time the Complaint was filed, the amount sought for the unpaid invoices was $2,173,700.83 and the amount sought for storage fees was $23,025.00. (*Id*. at 7, 10.) By the time Plaintiff filed its amended motion for default judgment, Plaintiff sought additional storage fees, totaling $69,075.00, and $5,200.00 of dumping fees. (ECF No. 16 at 3.) Plaintiff requests that the Court enter judgment against Defendant for damages, prejudgment interest totaling $354,265.18, and post-judgment interest. (*Id*.) On April 9, 2025, Plaintiff filed a proof of service indicating that Defendant was served by substituted service on March 25, 2024. (ECF No. 6.)

On May 1, 2024, Plaintiff requested Clerk's Entry of Default as to Defendant (ECF No. 7), and on May 3, 2024, the Clerk entered default against Defendant (ECF No. 8). The undersigned recommended denying Plaintiff's motion for default judgment without prejudice on June 3, 2025. (ECF No. 21.) On July 28, 2025, District Judge Mueller adopted the undersigned's recommendations in full. (ECF No. 22.) On November 26, 2025, Plaintiff filed a motion for default judgment against Defendant with a hearing set for January 21, 2026. (ECF No. 25.) On December 15, 2025, the undersigned vacated the hearing on the motion for default judgment and took the matter under submission without appearance and argument pursuant to Rule 230(g). (ECF No. 26.)

**LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought if that party fails to plead or otherwise

defend against the action. See Fed. R. Civ. P. 55(a). The decision to grant or deny an application for default judgment lies within the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (*citing Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the court may require the moving party to produce evidence in support of the motion for default judgment. See *TeleVideo Sys.*, 826 F.2d at 917-18.

Default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In making the determination whether to grant a motion for default judgment, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471-72.

**DISCUSSION**

**A.      Jurisdiction**

**1.      Subject Matter Jurisdiction**

When default judgment is sought, the "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). Plaintiff brought this complaint pursuant to 28 U.S.C. § 1332.

3

District courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). Plaintiff is a Texas limited liability company with its principal place of business in Plano, Texas. (ECF No. 1 at ¶ 1.) Plaintiff is informed and believes that Defendant is a Nevada corporation, with its principal place of business in Roseville, California. (*Id*. at ¶ 2.) The amount in controversy exceeds $75,000. (*Id*. at ¶ 10.) The parties are completely diverse, and the Court has subject matter jurisdiction over this action by way of diversity of citizenship pursuant to 28 U.S.C. § 1332.

### 2.    Personal Jurisdiction

To enter default judgment, the court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712. "Without a proper basis for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

In order to subject a non-resident defendant to personal jurisdiction, that defendant must have enough minimum contacts with the forum state that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

Here, Plaintiff alleges that Defendant has its principal place of business in Roseville, California. Accordingly, personal jurisdiction is satisfied.

### B.    Service of Complaint

In reviewing a motion for default judgment, the court must determine whether Defendant was properly served with the summons and complaint. Fed. R. Civ. P. 4(c).

A return of service filed on December 30, 2025, indicates that Defendant was served by

4

substituted service at the Defendant's place of business in Las Vegas, Nevada on a "Rosa Selina" who is allegedly an authorized agent. (ECF No. 27.) Additionally, Plaintiff asserts that it mailed a copy of the complaint to the person authorized to accept service. (*Id.*) Based on the information in the return of service, it appears Defendant was properly served. See Fed. R. Civ. P. 4(h) (a corporation must be served in a judicial district of the United States in the matter prescribed by Rule 4(e)(1) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant"); *id*. at 4(e)(1) (an individual may be served by following state law in the state where the district court is located); Cal. Civ. Proc. Code §§ 415.20(a), 416.10 (providing for substituted service for a corporation to a person authorized to receive service of process by leaving a copy of the summons and complaint at the person's usual place of business in the presence of a person apparently in charge of the office and by thereafter mailing copies to the person to be served at the place where the initial copies were left).

## C.    Application of Eitel Factors

### 1.    Possibility of Prejudice to Plaintiff

The Court considers whether Plaintiff would suffer prejudice if default judgment is not entered. Such potential prejudice to Plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff filed the Complaint against the Defendant on March 14, 2024, and Defendant has failed to respond to Plaintiff's complaint or otherwise put forth a defense in this action. *See* Docket. The present litigation cannot move forward, leaving Plaintiff no recourse other than to seek a default judgment. Accordingly, the first factor weighs in favor of entering default judgment

### 2.    Merits of the Substantive Claim and Sufficiency of Pleading

"The second and third *Eitel* factors both examine the merits and sufficiency of a plaintiff's complaint, and accordingly, are often analyzed together." *Johnson v. Qolor LLC*, 2022 WL 3348589, at *1 (N.D. Cal. Aug. 12, 2022) (internal quotation marks and citations omitted). The court considers whether the allegations in the complaint are sufficient to state a claim on which

plaintiff may recover. See *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *PepsiCo*, 238 F. Supp. 2d at 1175.

### a.    Breach of Contract

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011). The essential elements for a contract are: (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and (4) sufficient cause or consideration. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550). "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 208 (2006) (quoting Cal. Civ. Code §§ 1580, 1550, 1565). Mutual assent is typically demonstrated by an offer and acceptance communicated to the offeror. *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270-71 (2001). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved." *Meyer v. Benko*, 55 Cal.App.3d 937, 942-43 (1976) (citation omitted).

Plaintiff alleges that it entered into a contractual relationship with Defendant on or about September 2020. (ECF No. 1 at ¶ 5.) Plaintiff further alleges that it performed its obligations under the contract by supplying the goods and issuing corresponding invoices. *Id*. at ¶ 13. Plaintiff alleged Defendant breached its contract with Plaintiff when it failed to pay the amounts due on the issued invoices. *Id*. at ¶ 14.

In the findings and recommendations issued on June 3, 2025, the undersigned found that Plaintiff had not sufficiently alleged that it had entered into a contract with Defendant. (ECF No. 21 at 6.) There was no formal written agreement between the parties, and the only evidence offered by Plaintiff to establish a contractual agreement was "through the issuance and acceptance of invoices accompanied by email confirmations," and Plaintiff did not provide the Court with

email confirmations *Id*.

Here, unlike Plaintiff's first motion for default judgment, Plaintiff sufficiently alleges that there is a valid contract between the parties for the transactions occurring on 12/06/2022, 12/07/2022, 12/09/2022, 02/06/2023, 03/02/2023, and 04/11/2023.  Per the Court's findings and recommendations on June 3, 2025, Plaintiff has provided the requested email confirmations to aid the Court in establishing a contractual relationship. (ECF Nos. 25-1 at 13, 18, 22-23, 27-28, 34-35, 41, 47-48.) These emails include interactions with Plaintiff and Matthew Moore, the CEO of Defendant, and other officers. *Id*. Several of these emails are requests for items by Defendant's officers and an agreement to ship by Plaintiff. *Id*. These emails provide sufficient evidence of mutual assent for those specific transactions. *See Donovan*, 26 Cal.4th 261, at 270-71; Cal. Com. Code § 2204.

However, Plaintiff has failed to demonstrate that there was a valid contract between the parties for the transactions occurring on 01/04/23, 03/01/2023, 03/07/2023, 04/17/2023, 05/05/2023, 06/19/2023, 07/10/2023, and 12/15/2023. The only evidence Plaintiff offers to establish the existence of a contract is an invoice unsigned by Defendant. As stated in the Court's June 3, 2025, findings and recommendations, such invoices were "not enough information to determine whether there was a valid contract between the parties." (ECF No. 21 at 6.) Accordingly, Plaintiff has failed to state a claim for breach of contract for these transactions by failing to provide sufficient evidence of a contractual relationship.

### b.    Account Stated

The elements of an account stated claim are: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." *Leighton v. Forster*, 8 Cal. App. 5th 467, 491 (2017) (*quoting Zinn v. Fred R. Bright Co*., 271 Cal. App. 2d 597, 600 (1969)). A defendant's consent to an account may be implied where the defendant, after receiving the account, "waits for an unreasonable time before making or without making any objection" to it. *Cal. Bean Growers Ass'n v. Williams*, 82 Cal. App. 434, 442 (1927).

7

Here, Plaintiff issued invoices along with each order to Defendant, detailing the goods ordered and the amount due and owing on each invoice. (ECF No. 1 at ¶¶ 17, 18; *see* ECF No. 1-1.) Plaintiff also issued a demand letter to Defendant on January 22, 2024. (ECF No. 1-2.) As stated above, Plaintiff has only demonstrated that there has been an agreement among the parties for some but not all of the alleged transactions with Defendant for which it seeks recovery. *See Leighton v. Forester*, 8 Cal.App.5th 467, 492-493 (2017) (finding that a plaintiff's account stated claim failed due to failure to produce evidence of enforceable contract). Because not every transaction contains an email from an officer of Defendant confirming the transaction and the invoices contain the same defects as noted in the prior findings and recommendations, the Court will recommend granting Plaintiff's motion for default in part and denying it in part.

### 3.    The Sum of Money at Stake

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). This requires the court to assess whether recovery sought is proportional to the harm caused by defendants' conduct. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) ("Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct.").

Here, Plaintiff seeks damages in the form of $2,301,700.83 comprised of: $2,036,997.53 as the amount due for the purchase of products and related shipping costs; $164,703.30 as to the storage fees and dumping fees incurred due to Defendant's failure to provide timely shipping instructions; and $100,000 as to late fees incurred due to Defendant's failure to make timely payment. (ECF No. 25 at 8.) The amount for the purchase of products and shipping costs for the invoices accompanied by an email from an officer of Defendant is $1,278.175.81. *Id*. This amount is reasonable considering it is the amount owned based on the unpaid invoices and storage fees of what the Court deems valid contracts. This factor weighs in favor of granting the default judgment.

///

8

### 4.    The Possibility of a Dispute Concerning Material Fact

The Court may assume the truth of well-pleaded facts in the Complaint following the clerk's entry of default. Here, the Clerk entered default on May 3, 2024, and Defendant has not appeared. (ECF No. 8.) Thus, the Court finds no likelihood that any genuine issue of material fact exists. *See, e.g.*, *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord *Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. This factor favors the entry of a default judgment

### 5.    Whether the Default Was Due to Excusable Neglect

The record contains no indication that Defendant's default was due to excusable neglect. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendant "w[as] properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. *Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). As set forth above, on the record currently before the Court, it appears Defendant was properly served with summons and the Complaint. Despite having been served with the summons and the complaint, Defendant has failed to respond. The lack of any indication of excusable neglect favors entry of a default judgment.

### 6.    Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Rule 55 allows a court to decide a case before the merits are heard if defendant fails to appear and defend. *See PepsiCo,*

*Inc.*, 238 F. Supp. 2d at 1177. Although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment.

### 7.    Recommendation

Taken together, the remaining *Eitel* factors support granting the request for default judgment. It is therefore recommended that a default judgment be entered for the transactions with which Defendants have supplied confirmatory emails.

In accordance with the above, IT IS ORDERED as follows:

1. Within 5 days after these findings and recommendations are filed, Plaintiff shall serve a copy on Defendant by mail at the address where service of process was effected or at any more recent address known to Plaintiff, and shall file proof of such service

It is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 25) is GRANTED IN PART and DENIED IN PART.

2. Judgment be entered in favor of Plaintiff Hessenn Group LLC, and against Defendant InnerScope Hearing Technologies, Inc. for breach of contract and account stated for the transactions that took place on 12/06/2022, 12/07/2022, 12/09/2022, 02/06/2023, 03/02/2023, and 04/11/2023 for the sum of $1,278.175.81.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

/////

/////

/////

/////

/////

on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  March 19, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

7.hess.0794